# PUBLIC SERVICE COMMISSION, Appellant, v. UN-·ION PACIFIC RAILROAD COMPANY.

### In Banc, June 30, 1917.

**PUBLIC SERVICE COMMISSION:** Issue of Bonds by Union Pacific Railroad: Consent of Commission. A railroad company, incorpo-rated under the laws of another State, owning and operating 3500 miles of railroad, having a total trackage in this State of only about one thousand feet and that consisting of terminal facilities and switch tracks maintained for the accommodation of private shippers and industrial plants, and being in every sense an inter-state carrier, in 1908 executed a first-lien and refunding mort-gage on its entire system to secure an issue of $200,000,000 bonds, the mortgage being recorded in this State prior to the enactment of the Public Service Commission Act in 1913, but only $65,902,000 of bonds were issued at that time, the balance being reserved for future issue to cover expenditures to be made from time to time for construction of new track, rolling stock, improvements and betterments. Having expended over two million dollars for equipment and improvement, the company in 1914 applied to the trustee under the original mortgage for the issuance of $2,250,000 additional of the reserve bonds by way of reimburse-ment, and the bonds having been authenticated and delivered to the company are now in its treasury available for sale. The Pub-lic Service Commission, contending that the railroad company is subject to the provisions of the Public Service Act, which took effect on April 15, 1913, and that before consummating said sale the company must secure the permission of the commission, applied for an injunction to restrain the sale until such permis-sion is obtained. *Held,* that the said statute does not require said company to secure the consent and approval of the commission to the sale of said bonds.

Appeal from Jackson Circuit Court.—*Hon. T. J. Seehorn,* Judge.

Affirmed.

*A. Z. Patterson* and *James D. Lindsay* for appellant.

(1) The Legislature vested the Public Service Com-mission with complete authority and jurisdiction over the issuance by every railroad corporation of bonds to ·be se-

cured by liens upon the property of such corporations situated in this State, whether such corporations be organized under the laws of this State or of some other State. Secs. 43, 54, 55, 57, 58 and 59, also subdivisions, 6, 8 and 9 of Section 2, Public Service Commission Act 1913; State ex rel. v. Public Service Comm., 187 S. W. (Mo.) 827; Laws 1870, p. 90; Sec. 790, R. S. 1879; Sec. 3078, R. S. 1909; State ex rel. v. Patterson, 105 Mo. 303; Black on Interpretation of Laws, 141. (2) The State has the right to control the method and conditions of the conveyance or encumbrance of real property within its jurisdiction. In the absence of Congressional action regulating the encumbrance to secure a bond issue by a public service corporation of property located in and forming part of the State, though forming part of a system extending into another State and used in interstate transportation, the right of encumbrance of property within the State must be held and exercised in conformity with the laws of the State. State ex rel. v. Public Service Comm., 187 S. W. (Mo.) 829; DeLashmutt v. Teetor, 261 Mo. 433; Arndt v. Griggs, 134 U. S. 316; United States v. Fox, 94 U. S. 315. (3) The Provisions of the Public Service Commission Act, and particularly sections 54, 56, 57, 58 and 59 thereof, as applied to respondent are an exercise of the police power of the State, exerted for the general welfare in the absence of Congressional action on the same subject, affecting the interstate commerce of defendant only incidentally and remotely, and not in a manner to constitute a regulation of or an inhibited interference with said interstate commerce. Hall v. Geiger-Jones Co., 242 U. S. 539; Railroad v. Illinois, 177 U. S. 514; Express Co. v. Croninger, 226 U. S. 500; Railroad v. Kansas, 216 U. S. 262; Hennington v. Georgia, 163 U. S. 299; Railroad v. Ohio, 173 U. S. 285; Fuller on Interstate Commerce, p. 19; Pearsall v. Railroad, 161 U. S. 677; Securities Co. v. United States, 193 U. S. 317; Railroad v. Solan, 169 U. S. 133; Railroad v. Tobacco Co., 169 U. S. 311. (4) Supervision over the making and sale of bond issues secured by liens upon the property of public service corporations owning property and doing business in the State is the essential purpose of

law. The fee provided for is a secondary and incidental matter, and is not a tax in any proper sense. The one is a measure of protection of the State and of its citizens, and of the property in the State devoted to public use; the other a provision for reimbursement to the State for the services performed by the commission in the exercise of supervisory power. State ex rel. v. Public Service Comm., 187 S. W. 827; Tel. Co. v. New Hope, 187 U. S. 419; Tel. Co. v. Philadelphia, 190 U. S. 160. (5) The fee charged is not a tax. As a fee it is not invalid because measured by the amount of the entire bond issue which is also secured in part by property situated outside of this State. Railway Co. v. Botkin, 240 U. S. 227; Mining Co. v. Massachusetts, 231 U. S. 68; Railroad v. Stiles, U. S. Supreme Court Advance Opinions (January 15, 1917), No. 4, page 58. (6) Property held by respondent in this State is held "subject to all regulations and provisions of the law governing railroads in this State." Sec. 3078, R. S. 1909; Railroad v. Public Service Comm., 187 S. W. 829.

*Henry N. Clark, N. H. Loomis, R. W. Blair* and *I. N. Watson* for respondent.

(1) Section 55 of the Public Service Commission Law concerns the transfer and encumbering of public service franchises; it is an exercise of jurisdiction inhering in the State's own grant of such franchises. Section 57 concerns the issue of securities by domestic corporations; it is an exercise of the reserved power over the State's own creatures. Neither section is an exercise of the police power or of the sovereign power over the ownership of real property. People ex rel. v. Stevens, 197 N. Y. 1; People ex rel. v. Public Service Comm., 203 N. Y. 299; Christian Union v. Yount, 101 U. S. 352; Coppage v. Kansas, 236 U. S. 14; Railroad Co. v. McGuire, 219 U. S. 569. (2) Sections 55 and 57, correctly construed, are inapplicable to the bond issue and incidental encumbrance in suit, since the railroad company is a foreign corporation, enjoys no franchise from the State of Missouri and engages therein exclusively in interstate commerce. Christian Union v. Yount, 101 U. S. 352; Western Union v. Kansas, 216 U. S.

21; Moran v. Ross, 79 Calif. 159; Elliott on Railroads (2 Ed), sec. 1 (a). (3) If, however, sections 55 and 57 are construed as applicable to the bond issue and incidental encumbrance in suit they constitute a direct burden upon interstate commerce and upon property and business outside the State. Crutcher v. Kentucky, 141 S. 47; Western Union v. Kansas, 216 U. S. 1; Text Book Co. v. Pigg, 217 U. S. 91; Laird v. Railroad, 121 Md. 179.

BOND. J.—I.   The Public Service Commission seeks by this action to enjoin the Union Pacific Railroad Company from making a proposed issue of bonds to cover its expenditures for rolling stock and   other improvements and betterments, without first applying to it for authority.

<span style="margin-left:2em">The Union Pacific is one of the largest railroad systems in the United States. It was incorporated under the laws  of the State of Utah, and now owns and operates</span>

**Statement.**  3500 miles of railroad, which traverses seven states from its western terminus at Ogden, Utah, to its eastern terminus at Kansas City, Missouri. The book value of the company's holdings and property is about three hundred millions of dollars, of which only three millions is located in Missouri. Its Missouri property consists of rights of way and land acquired by purchase for terminal purposes and warehouses for  the  handling and storage of freight, together with its main track, which extends into the State only half a mile, and certain spur or switch tracks maintained for  the  accommodation  of private shippers and industrial plants, its total trackage in Missouri being only about one thousand feet.

In 1908, the company executed its First Lien and Refunding Mortgage on its entire system to secure an issue of $200,000,000 four per cent bonds.  This mortgage was duly recorded in the recorder's office of Jackson County, Missouri, prior to the enactment of the Public Service Commission Law, and only $65,902,000 of bonds were issued thereunder, the balance being reserved for future issue to cover expenditures to be made from time to time for construction of new track, rolling stock, improvements and betterments.

Having expended over two million of dollars for equipment and improvements, in 1914 the company applied to the trustee under the original mortgage for the issuance of $2,250,000 additional of reserved bonds by way of reimbursement, and the bonds having been authenticated and delivered to the company they are now in its treasury available for sale.

The commission contends the Union Pacific Company is subject to the provisions of the Public Service Commission Act of the State of Missouri, which took effect April 15, 1913, and that before consummating the sale and delivery of such bonds, it must secure permission to do so from the commission. The respondent railroad contends that the act does not apply to railroad corporations incorporated under the laws of another State, enjoying no franchise from the State of Missouri, and engaged therein exclusively in interstate commerce; that the application of the provisions of the act to defendant company would impose a direct burden upon interstate commerce and property and business outside the State. The pertinent portions of the Public Service Commission Act will be stated in the opinion.

On the allegations of the petition and answer both parties moved for judgment. The court sustained the motion of defendant, whereupon the plaintiff appealed to this court.

II. That the Legislatures of the several states may delegate to administrative bodies any power which is not "strictly and exclusively legislative" (Chief Justice MARSHALL) is an evolution of the law wrought by the logic of events and now firmly established. We have moved beyond the over-restrictive ancient rulings and now accord to lawmaking bodies full power, within the Constitution, to make use of any special agency necessary to effective action. In many states this is secured by adequate constitutional amendments. In others, lacking that facility, the organic law has received constructions narrowing its limitations to the strict letter of the chart. In the solution

<i>Delegation of Powers and Statutes.</i>

the reciprocal rights of the public and the great carriers and utility corporations, the Legislature cannot, in many cases, do justice to both, since its constitution and term of office disable it to make the investigation essential to that end. In such cases to act with wisdom, fairness and promptness, it must have expert and informative findings beyond the scope of any direct inquiry by the Legislature itself. Hence the necessity of employing special administrative bodies "charged with the solution of a problem demanding expert treatment" and having "no functions outside the field offered by this problem." This is the primal principle in the nature of the commissions created by the states. The Interstate Commerce Commission is a wholly different body and possesses larger powers as the delegatory of Congress, which in itself and through such agency, possesses plenary power "to regulate commerce." [U. S. Constitution, art. 1, sec. 8, subsec. 3; Railroad v. United States, 234 U. S. 1. c. 355 et seq.] The primal purpose to provide a corps of capable investigators and the requirement that their resultant finding shall be lawful and reasonable, are interpretative aids if borne in mind in the consideration of the statutes defining the power of public commissions. The ones involved in this appeal are, viz.: sections 54, 55 and 57, Pub. Serv. Act 1913.

Section 54 is, to-wit:

"Right to Issue Stocks, Bonds and Notes is Subject to Regulation By State. The power of railroad corporations, street railroad corporations and common carriers to issue stocks and bonds, notes and other evidences of indebtedness and to create liens upon their property situated in this State is a special privilege, the right of supervision, regulation, restriction and control of which is and shall continue to be vested in the State, and such power shall be exercised as provided by law and under such rules and regulations as the commission may prescribe." [Laws 1913, p. 592.]

Section 55 is, to-wit:

"Transfer of Franchises or Stocks. No railroad corporation, street railroad corporation or common carrier.

shall hereafter sell, lease, assign, transfer, mortgage or otherwise dispose of or encumber the whole or any part of its railroad or street railroad necessary or useful in the performance of its duties to the public, or any franchise or permit or any right thereunder, nor by any means whatsoever, direct or indirect, merge or consolidate such railroad or street railroad, franchise or permit, or any part thereof, with any other corporation, person or public utility, without having first secured from the commission an order authorizing it so to do. Every such sale, assignment, lease, transfer, mortgage, disposition, encumbrance, merger or consolidation made other than in accordance with the order of the commission authorizing the same shall be void. The permission and approval of the commission to the exercise of a franchise or permit under this act or the sale, assignment, lease, transfer, mortgage or other disposition or encumbrance of a franchise or permit under this section, shall not be construed to revive or validate any lapsed or invalid franchise or permit, or to enlarge or add to the powers or privileges contained in the grant of any franchise or permit, or to waive any forfeiture. Nothing in this subsection contained shall be construed to prevent the sale, lease or other disposition by any corporation, person or public utility of a class designated in this subsection of property which is not necessary or useful in the performance of its duties to the public, and any sale of its property by such corporation, person or public utility shall be conclusively presumed to have been of property which is not useful or necessary in the performance of its duties to the public, as to any purchaser of such property in good faith for value.'' [Laws 1913, pp. 592, 593.]

Section 57, as far as relied upon by appellant is, to-wit:

''Approval of Issues of Stocks, Bonds and Other Forms of Indebtedness. A common carrier, railroad corporation or street railroad corporation organized or existing, or hereafter incorporated under or by virtue of the laws of the State of Missouri, may issue stocks, bonds, notes or other evidences of indebtedness payable at

periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations or for the reimbursement of moneys actually expended from income." [Laws 1913, p. 594.]

III. The first question presented is the applicability of any of the above sections to the respondent railroad under the facts shown by its answer, leaving Control out of view for that discussion any question Over of the validity of such act. Foreign Corporations. Although the Public Service Act bears internal evidence that it was constructed by the eclectic method, its congruous and related parts should be considered in unison as far as practicable. The sections quoted appear in article 3, Laws 1913, p. 580. The article contains many diverse provisions as to the special powers and duties of the commission with which those under review have no necessary connection. The first section (Sec. 54, Laws 1913, p. 592) declares in substance that a corporate franchise, viz., the power to issue stocks and bonds or to create liens upon their property situated in this State, "is a special privilege" granted certain corporations, "the *control* of which is vested in the State" and shall be exercised "as provided by law" and the rules prescribed by the commission. In thus declaring itself to be *"vested"* with the control of the "special privilege" inhering in the charters of certain corporations, the State necessarily referred to those charters lying within its own grant or, in other words, to domestic corporations. Any other construction of the terms of this statute would involve the illogical consequence that a foreign corporation could not "issue stocks," etc., authorized by its charter, upon the assumption that its power to do so is a "special privilege," the right to control which *"is* and shall *continue* to be vested" in the State of Missouri. This assumption is, however, impossible for the reason that the entire authority of a foreign cor-

poration to issue shares of stock, grows out of and is limited by the terms of the charter granted to it by the State where it is created. It necessarily results that the right to issue such stock is *not* a "special privilege" given by the State of Missouri. Demonstrably, therefore, the Legislature could not have intended, by making *that privilege* the basis of the right to State control, to embrace corporations other than those who obtain such privilege from this State. It follows, upon the hypothesis of section 54, supra, that the provisions therein have no application to the respondent, which acquired no charter rights nor special privilege from the State of Missouri at any time.

The purpose of section 54 was to embody in the form of positive law the general legal principle that the right to control corporations owing duties to the public, was an incident to the grant to them of special privileges by the State asserting such authority. The provisions of this statute deny such corporations the right to exercise certain special privileges granted to them by the State of Missouri, except as "provided by law" and the rules of the commission. It is therefore a statute of regulation of such corporations by negation. But in the succeeding section (57, supra) the Legislature also regulated the exercise of the same franchises, viz., the right to "issue stock" by the same corporations and carriers, but uses in section 57 supra the words (omitted in section 54, supra): "organized and existing or hereafter incorporated, under or by virtue of the laws of the State of Missouri." We think this shows beyond doubt that the Legislature intended both its enactments to apply to the same corporations as specifically described in the latter section (57, supra).

IV.    There is another reason equally controlling why the respondent was not required to seek permission of appellant before issuing the bonds which it had previously contracted to use to pay for future rolling stock and the

**Unreasonable Order.**  betterment of its railroad. The statutes of this and other states provide two prerequisites to the validity of a finding and order

made by the Public Service Commission: They must be both "reasonable and lawful." [Laws 1913, sec. 111; Atchison, T. & S. F. Ry. Co. v. Pub. Serv. Com., 192 S. W. 460.]

The proposal of respondent in this case is to issue a series of bonds which were executed in accordance with the provisions of a mortgage covering the assets of its entire system in 1908, in which instrument it was agreed that the portion of bonds not then demanded for the immediate needs of the company, should be reserved and subsequently issued to reimburse the company for necessary expenses in the improvement of its roadbed and in the acquisition of property. In accordance with that stipulation the bonds now proposed to be issued have been surrendered by the trustee in order to reimburse the respondent for the purchase of rolling stock specifically described in section 14 of its answer, for which it expended $2,174,567.31 and $75,432.69 for other additions to and betterments of its road. The verity of this transaction is admitted, as is also the fact that according to the terms of the mortgage contract, the reserved bonds now requested to be delivered in reimbursement of such expenses will become a lien *pari pasu* with all previous issues upon the entire system of railroad owned by the respondent at the date of the mortgage contract and all property subsequently acquired by it. It thus stands admitted, that the respondent is acting in the utmost good faith and in strict accordance with this mortgage contract in seeking to apply the bonds now delivered to it by the trustee to the payment of the very indebtedness created in reliance upon that promise. It is not suggested in any way that the public, here or elsewhere, could suffer by this appropriation of the bonds according to the contract therefor before the creation of the Public Service Commission. The amount of property owned by respondent in this State is only one per cent of that which is owned in other States, and all of its property is exclusively employed in the performance of its duties as an interstate carrier. In these circumstances it is impossible to conceive any reasonable ground for the theory of the appellant that the issuance

of the above bonds should now be arrested because not previously approved by appellant. [Laird v. Railroad, 121 Md. 179.] This contention is not rooted in reason, nor is it conducive to the interest or welfare of the people of this State, if, indeed, its sustention would not be a direct impairment of the terms and stipulations of the contract, made by respondent when it executed the mortgage authorizing the use of the bonds for the purpose to which respondent now seeks to devote them. We do not think that an order of the commission refusing permission for the issuance of these bonds would be sustained, if made, under the facts stated in the answer and admitted to be true by appellant in this case. Our conclusion is that appellant is not entitled to the relief sought, either under sections 54 and 57, supra, nor upon the facts in the record.

V. Section 55, supra, clearly affords no basis for this suit to enjoin respondent from the issuance of the bonds to reimburse it for moneys paid out in reliance on reimbursements by their use. That section was evidently intended to provide against a disposition of their property by steam and street railroads and common carriers, charged with duties to the public, through some method of sale or merger; and to that end it prescribes that no such transaction shall take place without the permission of the Public Service Commission. This purpose on the part of the Legislature is emphasized by the concluding portion of the section, which provides that nothing therein contained "shall be construed to prevent the sale, lease or other disposition . . . of property which is not *necessary or useful in the performance of its duties to the public*," and by the further provision that in case of a sale by any such corporation, of its property to a purchaser in good faith, it shall be conclusively presumed that the property so disposed of "is not useful or necessary in the performance of its duties to the public." It is apparent from the provisions of this section and the mischiefs sought to be prevented by it, that it is wholly inapplicable to the transaction shown in this record, whereby respondent is simply reimbursed for any

*Section 55*

outlays in maintaining its property for the purpose of *performing its duty to the public.*

VI. Some suggestion is made that this injunction ought to issue upon the ruling of the Supreme Court of the United States in the Geiger case (Hall v. Geiger-Jones Co., 242 U. S. 539), where it was held that an Ohio state law, commonly known as the "blue sky law" and intended to prohibit sales of fraudulent securities, did not trench upon interstate commerce in requiring persons engaged in making such sales *in that state,* to take out a license. We fail to see any analogy between the facts of that case and the sections of the statutes under review. It was held in that case that such a requirement as to license only incidentally or indirectly affected interstate commerce, and having been passed in genuine exercise of the police power, would not be held invalid in the absence of any action having been taken by Congress.

*Comparison to Blue Sky Law.*

The statutes under review in this case were not directed primarily against any action falling within the just boundaries of the police power. They were designed only, as has been shown, to safeguard reasonable control by the State, through its agencies, of corporations enfranchised by it.

The conclusion we have reached with reference to the meaning and object of the statutes under review, renders it wholly unnecessary for us to consider the point made by respondent that if applicable to it, they would constitute an interference with interstate commerce. [International Text Book Co. v. Pigg, 217 U. S. 91; Western Union Tel. Co. v. Kansas, 216 U. S. 1.] Having held that under the facts shown in this record respondent's transaction was not within the purview of the statutes, the further question as to their validity is wholly academic.

Our conclusion is the judgment of the circuit court dismissing the bill was correct. It will, therefore, be affirmed. *Walker, J.,* concurs; *Faris, Woodson* and *Williams, JJ.,* concur in result; *Graves, C. J.,* concurs in separate opinion; *Blair, J.,* dissents.

GRAVES, C. J. (concurring).—I concur in the result of the majority opinion in this case. I place such concurrence in the result upon one ground only. The right to sell the bonds in question was a fixed right long before the enactment of our Public Service Commission Act. This fixed and vested right was not, and could not be, disturbed by our Act of 1913. For this reason, and this alone, I concur in the result reached by the majority opinion.