VOL. 272, OCTOBER TERM, 1917.      645

State ex rel. Ry. Co. v. Public Service Comm.

# THE STATE ex rel. ST. JOSEPH RAILWAY, LIGHT & POWER COMPANY v. PUBLIC SERVICE COMMISSION et al., Appellants.

In Banc, December 22, 1917.

1. **PUBLIC SERVICE COMMISSION**: Alteration of Grade Crossings: Delegation of Legislative Power. It was entirely competent for the Legislature to delegate to the Public Service Commission composed of trained experts exclusive power to require the installation, alteration or removal of the crossings of highways by railroads and street railways, and a separation of grades at such crossings, and to prescribe the terms upon which such separations are to be made and the proportions in which the expense shall be divided among the railroad and street railway corporations affected, or between them and the State, county or municipality or other public authority in interest, as it has done.

2. ——: ——: ——: Modifications of Common Law. The statute giving to the Public Service Commission "exclusive power" to charge the costs and expenses of the elimination of a street grade-crossing and the restoration of the highway against the street railway or steam railroads affected, or to apportion them among other parties interested, and making it its duty to apportion such costs among such corporations and "the State, county, municipality or other public auhtority," is but a modification by positive law of the common law, by expanding the principles of the common law so as to fit the conditions arising in social and industrial evolution and to apply them to a fuller and more enlightened justice than was afforded under the narrower enunciations of that law at a time when there were fewer diversities of interest to be affected by the removal of railroad street crossings.

3. ——: ——: Reasonable Apportionment of Costs: According to Trackage. Where the Public Service Commission found the total cost of the removal of dangerous street-level crossings and the restoration of the highways, and subtracted therefrom the estimated consequential damages to private property and apportioned that deduction to the city, and of the balance of $238,000 apportioned $203,431 to the steam railroads and $34,569 to the street railway, using the "trackage basis" plan in making the allotment, principally but not solely, but taking into consideration certain other elements of constructive cost and benefit of the general improvement, and its finding is sustained by the clear preponderance of the relevant testimony as to the proper method of making the apportionments, they will not be held to e unreasonable or un-

646    SUPREME COURT OF MISSOURI,

State ex rel. Ry. Co. v. Public Service Comm.

just, although the street railway company contended throughout that it should be required to pay only the estimated cost of the work to be done within its track zone, which would be materially less than its allotment.

4. ———:. Reasonableness of Order: Determined Upon Equitable Principles. The reasonableness and justice of an order of the Public Service Commission will be determined by the court upon a review of all the evidence as in a trial of a suit in equity.

*Held*, by BLAIR, J., dissenting, with whom WILLIAMS, J., concurs, that, for the reasons stated in State ex rel. Wabash R. Co. v. Publ. Serv. Com., 271 Mo. 155, the court in cases like this does not weigh the evidence as in suits in equity.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

REVERSED AND REMANDED.

*Alex. Z. Patterson* and *James D. Lindsay* for appellants.

(1) Section 50 of the Public Service Commission Law (Laws 1913, p. 589) provides that the expense of grade crossing elimination shall be by the Public Service Commission "divided between the railroad or street railroad corporations affected, or between such corporations and the State, county, municipality or other public authority in interest." Acting under the authority of this statute, the Public Service Commission lawfully apportioned a reasonable part of the expense of the grade-crossing improvements to the Street Railway Company, and the circuit court should have affirmed such order of apportionment. 33 Cyc. 290; Milwaukee v. Railroad, 9 Wis. R. C. R. 93, 1915 B. P. U. R. 155; Polk v. Railroad Comm., 154 Wis. 523; Woodruff v. Catlin, 54 Conn. 277; Railroad v. Bristol, 155 U. S. 556; Tobacco Co. v. St. Louis, 247 Mo. 374. (2) The evidence before the Public Service Commission, and before the circuit court upon review, conclusively shows that the apportionment of $34,000 to the Street Railway Company of the total cost of the improvement, $443,591, was a fair and just apportionment, and the circuit

court's judgment herein is plainly, flagrantly and indisputably contrary to the evidence. (3) The subway plan of improvement, as approved by the Public Service Commission, was accepted by the Street Railway Company by its written statement of acceptance filed with the Public Service Commission, and the circuit court committed gross error in hearing and considering the Street Railway Company's objection to this plan. (4) In making the apportionment order herein, the Public Service Commission considered the "trackage basis" proposed by the railroads, and also a division of expenses based upon the estimated cost of the street railway track changes, to which was added the saving resulting to the Street Railway Company on account of the removal of crossings. The latter basis of apportionment did not take into consideration expense of raising steam railroad tracks at Fourth and Monterey streets, and it assigned $569 more to the Street Railway Company than the "trackage basis." (5) The Street Railway Company's contention that the apportionment order of the Commission unjustly required it to pay a part of the cost of changing steam railroad tracks is without merit. The "trackage basis" of apportionment, used in the conference between the parties, lumped together all the costs of changing and reconstructing both steam and street railway tracks, constructing the subway, and repaving the surface of Sixth Street.

*M. G. Roberts* and *H. J. Nelson* for St. Joseph Union Depot Company as *Amicus Curiae.*

*Joseph T. Davis* for respondent.

(1) The State has power to cause steam railroads to remove tracks from streets and crossings at the cost and expense of the railroads. Tobacco Co. v. St. Louis, 247 Mo. 374. (2) Apportionment of costs and expenses upon trackage basis is wrong, and inequitable. Milwaukee v. Railroad, 9 Wis. R. C. R. 193; Milwaukee v. Railroad, 15 Wis. R. C. R. 762; Re D. L. & W. Railroad, P. U. R. 1915 F, p. 180. (3) Respondent should

not be charged with taking care of cost of changing property of other public service corporations. Every public utility must take care of its own mains and poles, etc. Re Long Island Railroad Co., P. U. R. 1917 F, p. 44.

BOND, J.—I. In 1914 the mayor of the city of St. Joseph filed four complaints to the Public Service Commission against various railroad companies and the St. Joseph Street Railway Company, looking to the removal of dangerous street-level crossings. From the order of the Commission apportioning the cost of grade-crossing eliminations to the various companies, an appeal was taken to the circuit court of Cole County by the Street Railway Company. The order was reversed and the cause remanded and from that judgment the Public Service Commission has perfected an appeal to this court.

The plan finally adopted by the Commission for the elimination of the various dangerous grade crossings was agreed to and accepted by all of the railroad companies, and the controversy here is over the amount apportioned to be paid by the Street Railway Company as its share of the total cost.

The Public Service Commission found the total cost of the improvement and subtracted therefrom the estimated consequential damages to private property and apportioned it to be paid by the city. It then allotted the balance to be paid by the railroad companies, which then undertook to meet at Chicago and agree as to the proper apportionments *inter sese*. As a result of that meeting one-seventh of $238,000, or $34,000, was allotted to be paid by the Street Railway Company and the remainder of the cost of the improvement was to be borne by the steam railroad companies.

The Street Railway Company being dissatisfied with this charge against it, filed a motion before the Public Service Commission to re-apportion the cost of the improvement as between it and the other railroad companies. Upon the hearing of that motion it was shown by the testimony of various engineers that the

VOL. 272, OCTOBER TERM, 1917.          649

State ex rel. Ry. Co. v. Public Service Comm.

methods usually employed to reach an adjustment of cost in such cases are what are termed the "trackage basis" and the "right of way basis;" that in this instance it was found impracticable to use the "right of way basis," and that the "trackage basis" (by which the estimate of $34,000 was made at the Chicago conference) was fair and reasonable. At this hearing it was further shown that the Street Railway Company would receive certain benefits from the removal of specified grade crossings equal to that accruing to any one of the steam railroads; but that the steam railroads, in addition to bearing their proportionate part of the cost of subways and track raising, would have to bear also the further expense of installing an interlocking plant and acquiring considerable right of way.

On the other hand the Street Railway Company insisted that it should be required to pay only $12,500, the estimated cost of the work to be done within the Street Railway Company's track zone.

In estimating a fair apportionment of the amount to be paid by the Street Railway Company, the Public Service Commission then took into consideration certain other elements of constructive cost and benefit of the general improvement and did not base its conclusion solely upon the "trackage basis" by which the cost was apportioned by the conferring railroads at their Chicago conference. In following this plan the Commission took the evidence of its own engineers and experts, as well as the testimony of persons present and taking part in the Chicago conference, and as a result estimated the amount properly chargeable to the Street Railway Company at $46,569, from which sum it deducted $12,000 to cover the benefits that would accrue to the steam railroads by doing away with the expense of crossing watchmen, thus leaving the amount allotted to the Street Railway Company $34,569, or $569 more than the estimate under the "trackage basis," of which the Street Railway Company was complaining in its motion.

II. In the performance of its duties the Public Service Commission derives its powers to act from the

terms and intendment of the legislative enactments which created that body. [Laws 1913, p. 556.] Section 50 of that law invests the Public Service **Powers of Commission.** Commission with "exclusive power" as to the installation, alteration or removal of the crossings of highways by railroads and street railroads, and "to require, where, in its judgment, it would be practicable, a separation of grades at any such crossing heretofore or hereafter established, and to prescribe the terms upon which such separation shall be made and the proportions in which the expense of the alteration or abolition of such crossings or the separation of such grades shall be divided between the railroad or street railroad corporations affected or between such corporations and the State, county, municipality or other public authority in interest." [Laws 1913, p. 589, sec. 50.] It was entirely competent for the Legislature to delegate these functions to a trained body of experts, since they do not involve the exercise of the exclusive power of lawmaking which a Legislature cannot part with. [Public Serv. Comm. v. Union Pac. Ry. Co., 271 Mo. 258, par. 2.]

It cannot be doubted prior to this statute that full power inhered in the State and its auxiliaries in government, such as municipalities, to require separation of the grades at crossings and to impose the entire expense thereof upon an occupying railroad, upon the theory that the permission to cross a highway given to a railroad, is upon the basic condition that it shall be restored, upon the cessation of such occupancy, either by the act of the railroad or in conformity with directions emanating from the State in the exercise of its sovereign powers of police, so as to be safe and convenient for use by the public. [Am. Tob. Co. v. St. Louis, 247 Mo. 1. c. 433 et seq., and cases cited.]

And it cannot be doubted that independently of the provisions of the subsequent acts of the Legislature quoted above, the costs and expenses of the elimination of grades and the restoration of the highway might have been imposed wholly upon the railroads under a valid ordinance of the city of St. Joseph. But the fur-

ther contention of the learned counsel for respondent, that the Public Service Commission was not authorized under the section of the statutes upon which its action in this matter is predicated, to charge such proportion of the expense to the Street Railway Company, loses sight of the plain language and intent of the statute giving the Public Service Commission *"exclusive power"* to act in such matters and vesting it with complete authority to make an allotment of the expense among other parties in interest than the railroads, and over-looks the further fact that the statute makes it the duty of the Public Service Commission to apportion the expense of crossing eliminations "between state, county, municipal or other public authority in interest." These provisions are modifications of the common by the positive law, by expanding its principles so as to fit the conditions arising in social and industrial progress and to apply to them a fuller and more enlightened justice than was afforded under the narrower view of the common law enunciated at a time when there were fewer diversities of interest to be affected by removal of railroad crossings. In order to be a perfect scheme of social justice, the law must grow and expand to meet the diversified interests which increase as society advances.

We can see no reason why such a statutory modification and reformation of the common law should be subject to any constitutional or legal attack. It is the duty of an intelligent law-making body, in the exercise of its constitutional power, to alter, modify or abolish any rule of the common law which has become obsolete or unequal to the demands of social advancement, and to substitute by statute more refined rules of justice than were afforded by the cruder customs of early stages of society.

Our conclusion is that there is no merit in the contention that the Public Service Commission did not have plenary power to apportion among all the parties in interest, including the street railway company as well as the city and the steam railroads, the cost and

652    SUPREME COURT OF MISSOURI,

State ex rel. Ry. Co. v. Public Service Comm.

expense of the general improvements for the safeguarding of the public by its order eliminating the grade crossings in the city of St. Joseph.

III. The only question left is the reasonableness and justice of the apportionment made by the Public Service Commission as far as it involved the charge of $34,569 against the complaining street railway. The learned counsel for respondent insists correctly that this should be determined after a review of the evidence, all of which is before us, as in the trial of suits in equity. [Railroad v. Pub. Serv. Com., 266 Mo. l. c. 341; s. c. In Banc, Unanimous Per Curiam on Rehearing, l. c. 346; Lusk v. Atkinson, 268 Mo. l. c 117, 118; State ex rel. v. Pub. Serv. Com., (Sep. Concurring Opinions of Bond, Graves and Woodson, JJ.), 271 Mo. 155 (l. c. 161, 165, 167).] It is further contended that when this is done the street railroad company should not be charged with a greater sum than fifteen thousand dollars, and in fact, on the last page of his brief, the learned counsel for respondent insists that the judgment of the circuit court should be affirmed and the cause remanded to the Commission "with directions to the Public Service Commission to make an apportionment on an equitable basis by apportioning to the street railway company . . . the expense," etc., not to exceed $15,000. It is apparent, therefore, that the final contention of the respondent street railway company is not that no part of the expense necessarily incident to the general improvements, should be apportioned to it, but only that the Public Service Commission made an excessive apportionment. We are not prepared to concur in that view. After a careful and painstaking review of the relevant testimony in the record before us, we have been unable to reach the conclusion that the finding of the Public Service Commission is not sustained by the clear preponderance of the testimony as to the proper method of making such an apportionment and the proper amount to be borne by the street railway company.

*Reasonable Apportionment.*

It necessarily follows that the learned circuit judge fell into error in setting aside the order of the Public Service Commission. His judgment in so doing is, therefore, reversed and the proceeding remanded, and the order heretofore made by the Public Service Commission is affirmed. It is so ordered. All concur; *Blair, J.,* in separate opinion in which *Williams, J.,* joins.

BLAIR, J. (concurring)—I concur in all of this opinion except that portion which holds that in cases like this the court weighs the evidence as in a suit in equity. My views upon that question are expressed in State ex rel. v. Public Service Commission, 196 S. W. 369. *Williams, J.,* concurs herein.