Donald E. THROCKMORTON,
Plaintiff-Respondent,

v.

**WABASH RAILROAD COMPANY,**
Defendant-Appellant.

No. 24208.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 1966.

Application to Transfer Denied Jan. 9, 1967.

Gene Thompson, Maryville, for appellant.

Joe Beavers, Larry L. Zahnd, Maryville, for respondent.

SPERRY, Commissioner.

Mr. Throckmorton, plaintiff, sued the Wabash Railroad Company, a corporation, for damages to his milk truck, milk cans, and milk when the rear end of the truck was "struck" on the north approach to the railroad crossing located on State Supplemental Highway A.B. in Nodaway County. Trial to a jury, which ended July 19, 1964, resulted in a verdict and judgment in favor of plaintiff in the sum of $3,000.00. Defendant appeals.

Plaintiff testified to the effect that, on May 26, 1962, he was operating his loaded milk truck in a northerly direction on the above mentioned highway, approaching the crossing over defendant's railroad; that it was getting good daylight and was raining; that he crossed the track of defendant without incident and proceeded to a point north of the north rail of the track when the front wheels of the truck began sliding to the east, toward the grader ditch; that the right front went into the grader ditch at a point 34 feet north of the north

rail of the track; that the entire truck, including the milk box, was clear of the railroad track; that the overall length of the truck was 25 feet; that the rear wheels were still in the main traveled track, but the front was angled to the northeast at 45 degrees; that the truck came to a stop and he attempted to back it toward the crossing, straightening the front wheels, so as to get them in the main traveled track of the roadway; that the north "approach" to the crossing (the truck was traveling north on that "approach", on the right-of-way of defendant) was wet and muddy from rain; that it did not appear to be muddy or soft; that the surface was covered with gravel but that the gravel coating was only about two inches thick; that the gravel was mixed with mud; that the wheels of the truck sank down in the roadway and made tracks several inches deep; that he had traveled over this crossing regularly for several months but had never before traveled it when it was raining; that the roadway on the south approach was solid; and that the *traveled* roadway north of the track was also solid.

His testimony was to the effect that, when the front wheels got near or into the ditch, his left rear wheel was on solid ground, in the roadway, in the solid track; that he backed the truck toward the railroad track; that the right rear wheel dropped into a hole off the side of the track, off the side of the road; that the truck "stuck"; that the right rear wheel went into the hole hub deep; that the back wheels were up *almost* even with the end of the ties; that he didn't see any way to get the truck moving, and went to a farmhouse where a tow truck was ordered; that, when he was returning to the scene, when a few hundred feet away, defendant's train approached and struck the rear end of the truck, which protruded several feet over the rails of the track.

He stated that, as he backed toward the track, the roadway was soft and muddy; that the back of the truck slid to the east and the right wheel dropped into a hole off

the side of the road; that the wheel went into the hole hub deep; that when the rear end began to slide the rear wheels were "up *almost* to even with the ties or track"; that they went to the east; that they slid four or five feet; that the hole was to the east of the road and to the *north* of the crossing; right by the tie; right up against the tie; that the back of the truck extended to the rear about five feet beyond the axle; that, after the truck became stuck, the rear end extended four or five feet over the track. From plaintiff's testimony it appears that the rear wheels of the truck were north of the crossing when the vehicle finally came to rest.

He stated the front wheels were 20 feet north of the crossing when it was finally stuck. Therefore, the rear wheels were north of the crossing because of their distance from the front wheels. They were not on the crossing. Indeed, a picture of the crossing at this point, which was in evidence, clearly indicates that the wheels could not have mired down at any point south of the north edge of a 26½ foot board which was fastened to the end of the ties and adjacent to the outside, north side, of the north rail. Pictures also indicate that traffic crossed at about the middle of these boards and not within several feet of either end. No part of the events here shown occurred within the limits of the crossing. All occurred on the north side of the tracks, on the approach. Plaintiff's evidence, and the physical facts, establish that fact conclusively. Plaintiff pleaded defective *construction* and *maintenance* of the *approach* to the crossing, in that it was not constructed "with a covering of macadam, gravel or equally durable material to a depth of not less than six inches as required by statute (389.610 VAMS) and ordinary care". His evidence was all directed to proof of that allegation. He submitted · that theory to the jury under his Instruction No. 1.

Plaintiff also offered the testimony of Sgt. Whan, State Highway Patrol, who arrived at the scene at 6:30 A.M. He stated that plaintiff showed him a hole "at the north edge of the ties (where the truck was struck); that it was *east* of the plank laid alongside the rail", "over near the ditch", "the ditch along the east edge of the highway that runs north and south".

Defendant moved for a directed verdict at the close of all of the evidence. Its chief contention here is that plaintiff made no submissible case because defendant, under the law of this state, owed no duty to construct or maintain the approach to this crossing upon which the claimed defect that caused, or contributed to cause the casualty, existed.

The general statute governing the construction and maintenance of railroad crossings over public highways is stated in Section 389.610 VAMS. That section originally came into the law from Laws of Missouri, 1853, 2d Session, p. 142, § 47. However, the Legislature, Laws 1913, page 589 (now Section 389.640 VAMS) provided that no crossing over a public highway by a railroad should thereafter be constructed without permission previously granted by the Missouri Public Service Commission and that, upon an application duly made, the Commission shall have the right to *refuse its permission or to grant it upon such terms and conditions as it may prescribe.*

In paragraph 2 of said section (389.640 VAMS) it is further provided that the commission shall have the *exclusive* power to *determine and prescribe the manner,* including the particular point of crossing, and *the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing of a public road or highway by a railroad, and to alter or abolish such crossing.*

It has been held that this section is not invalid as delegating legislative power, but is constitutional. State ex rel. St. Josephs Ry., Light & Power Co. v. Public Service Commission, 272 Mo. 645, 199 S.W. 999, 1001. Since 1913, the Public Service Commission has had exclusive jurisdiction over the *establishment, installation, operation,*

*maintenance* and apportionment of expense and protection of such crossings. Liddle v. Thompson, 236 Mo.App. 1071, 162 S.W.2d 614, 621. In the last mentioned case, however, it was not shown that the crossing was established under order of the commission, or, if so, what were the terms of the order made concerning installation and maintenance. The cause was remanded for a new trial, for further evidence on that question.

■ An approach to a railroad crossing means "that prepared or made condition on the highway necessary to make a safe, easy, and convenient way across the tracks". Albright v. Louisiana & M. R. R. Co., 189 S.W.2d (Mo.App.) 665, 667. It was on the north approach to this crossing that the truck became finally stuck.

In Clark v. Mississippi River & B. T. Ry. Co., 324 Mo. 406, 23 S.W.2d 174, 177, the court held that, in the case there considered, had the crossing been installed or altered after the provisions of the 1913 statute became effective, it would have been necessary for the commission to have determined and prescribed the terms of its *installation and maintenance* but that, until the commission assumed jurisdiction with respect to this particular crossing and made some such order, the defendant railroad's duty remained undisturbed, that is, governed by the law as it existed prior to the enactment of what is now Section 389.640 VAMS. See City of St. Louis v. St. Louis-San Francisco Ry. Co., 330 Mo. 499, 50 S.W.2d 637, 638; Patterson v. Thompson, 277 S.W.2d (Spgfd.App.) 314, 317.

Introduced into evidence was a stipulation, duly entered into by and between the parties hereto, which was to the effect that, on July 16, 1957, proceedings were commenced before the Public Service Commission seeking permission for relocation of a crossing over defendant's tracks on Supplemental A.B.; that, after due notice to all parties, a hearing was held on the application for relocation of the crossing; that, on October 10, 1957, the commission's order was handed down whereby the State

Highway Commission and defendant herein were authorized to relocate this crossing and ordering the State Highway Commission, at its own cost, to construct and *maintain* that portion of the highway *up to the ends* of the railroad ties, including all necessary drainage facilities; that defendant in this action shall *install* and *maintain,* at its cost, the necessary crossing facilities *between the ends of the railroad ties.*

There was testimony from Mr. Murphy, area maintenance supervisor, Missouri State Highway Department, during the prior sixteen years, including May 26, 1962, that he has had charge of maintaining the railroad crossing here involved; that the state has and does maintain that crossing, since its construction was completed in 1958; and that the state maintains the approaches to the crossing, up to the ends of the ties, both north and south of the crossing.

Mr. Lett, resident engineer of the Missouri State Highway Commission for the area including Nodaway County, during the prior 17 years, testified that he received a copy of the order heretofore mentioned, as made by the Public Service Commission, and has same in his files; that, pursuant to said order, this crossing was constructed under the supervision of witness's office, and of witness personally; that it was completed in 1958; that it is now, and has been since construction, maintained under witness's supervision; that he has custody of the plans of construction and that the crossing was built in accordance with said plans (as approved by the Public Service Commission).

■ Under the law as it now exists in Missouri defendant herein is not liable for any damages growing out of defects of construction or maintenance of the north approach to the railroad crossing Supplemental A.B., which defect did not exist between the ends of the ties of defendant's track but existed on the north approach to said track and crossing. Defendant's mo-

tion for directed verdict should have been sustained.

The judgment is reversed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.