Nixon v. Hannibal & St. Joseph Railroad Company, *Appellant.*

Division One, November 23, 1897.

1. **Watchfulness in Traveler Across Railroad:** CONTRIBUTORY NEGLIGENCE. No rule of law requires a traveler on a highway to look "particularly" to see if it is free of defects. One passing over a railroad crossing is only required to exercise ordinary care, under all the circumstances. Unless he sees the dangers or has them in mind when he attempts to cross, he can not fairly be charged with contributory negligence as a matter of law.

2. **Negligence:** CIRCUMSTANCES SURROUNDING A CASE. The circumstances of a case to recover damages for injuries due to a defective railroad crossing, include the known duty of a railroad company to make and maintain the crossing in the manner required by statute, the knowledge of the traveler of its condition previous to the accident and of the prior neglect of the company in respect to maintaining it, and his imperative duty to look out for running trains.

3. ———: RULE OF CARE GOVERNING INJURIES DUE TO RAILROAD CROSSINGS. The well established rule as to negligence and care in cases of injuries caused by defective streets and sidewalks, should be applied in case the injury results from a defective railroad crossing.

4. **Railroad Crossings:** STATUTORY LIABILITY. Section 2609, Revised Statutes 1889, imposing an absolute and continuing duty on railroads in respect to maintaining crossings, makes companies liable for all damages resulting from neglect to *construct* such crossings, but for neglect to keep them in repair it declares no liability.

5. ———: REASONABLE TIME. The law allows a railroad company a reasonable time to discover and repair a defect in a road crossing. An instruction therefore that practically told the jury that the company was bound at all times to keep its crossing in a safe condition, was erroneous.

6. ———: STATUTORY DUTY. Where the measure of a railroad company's duty is prescribed by statute, it is error to instruct the jury that it is its duty "to have and keep such crossing in a safe condition."

7. ———: ROAD'S LIABILITY. If a company fully complies with the requirements of the statute in constructing and maintaining a railroad crossing and in securing the safety of the public while crossing its road, then it is not liable if one is injured because of a defect in the crossing.

8. ———: REPAIRING DEFECT: NOTICE. A railroad company must repair a defect in a road crossing within a reasonable time after notice thereof, constructive or actual; and whether or not notice will be implied from the length of time the defect existed, is a question for the jury.

9. ———: INSURERS OF SAFETY. The law does not impose on railroad companies the duty of insuring the safety of those crossing their tracks at a public road, but their duty requires only reasonable care in discovering defects in the crossing and proper diligence in repairing them.

10. ———: TRAVELER'S PRESUMPTIVE RIGHTS. It is error to instruct a jury that the injured traveler had a right to presume that the company had repaired the defect in a road crossing within a reasonable time when there is no evidence that he acted upon such a presumption, or that he even thought of the matter.

11. **Notice**: DEFECT: OPPORTUNITY TO REPAIR. An instruction that told the jury that if "the defect had existed long enough for the defendant to have discovered it by the exercise of reasonable care on the part of the officers and employees, then the law presumes that defendant had notice of such defects," is *held* to be erroneous, because the company must have had both the notice of the defect and an opportunity to repair it.

*Appeal from Caldwell Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED AND REMANDED

*Spencer & Mosman, William Henry* and *Turner & Hinton* for appellant.

(1) The court erred in giving to the jury the plaintiff's first instruction. Said instruction declared "that it was the defendant's duty to keep and maintain such crossing safe." The defendant was only bound to exercise ordinary care in maintaining the crossing. *Maus v. Springfield*, 101 Mo. 617; *Kiley v. City of Kansas*, 87 Mo. 106; *Haniford v. City of Kansas*, 103 Mo. 181; *Gerdes v. Iron Foundry Co.*, 124 Mo. 359. (2) The defendant was only required to maintain said crossing in such a condition as to be reasonably safe for the use of the public. *James v. Railroad*, 107 Mo. 480; *Tetherow v. Railroad*, 98 Mo. 74; *Railroad v. Douglas*, 27 S. W. Rep. 793; *Railroad v. Weaver*, 41 S. W. Rep. 846; *Gallette v. Railroad*, 8 Allen, 560; *Tobias v. Railroad*, 61 N. W. Rep. 517; *Railroad v. Raymond*, 108 Ill. 246. (3) It can not be contended that the error committed in giving the first instruction was harmless. "Error" is presumptively prejudicial, and it devolves on the party asserting its harmlessness to show it affirmatively. This is the rule in this court. *State v. Taylor*, 118 Mo. 161; *Morton v. Heidorn*, 135 Mo. 617; *McGowan v. Ore Co.*, 109 Mo. 518; *Quirk v.*

*Elevator Co.*, 126 Mo. 295; *Bindbeutal v. Railroad*, 43 Mo. App. 463. (4) Nor can it be contended that the defect in this instruction is cured by other instructions, because it is necessarily inconsistent and irreconcilable with the other instructions. *State v. Cable*, 117 Mo. 386; *Stevenson v. Hancock*, 72 Mo. 612; *Bluedorn* case, 108 Mo. 450; *Kinner v. Tschirpe*, 54 Mo. App. 575; *Sharp v. Cable Co.*, 114 Mo. 94; *Hohstadt v. Daggs*, 50 Mo. App. 240; *Spillane v. Railroad*, 111 Mo. 555. (5) By the third instruction constructive notice to the defendant was all that was necessary to charge it with liability, without regard to whether the defendant had an opportunity, after such constructive notice, to make the repairs or not. It made bare constructive notice negligence. *Maberry v. Railroad*, 83 Mo. 667; *Wilson v. Railroad*, 87 Mo. 431; *Maus v. Springfield*, 101 Mo. 618. (6) If the fourth instruction meant anything, it meant that Nixon had the right, when he approached this crossing, to believe that the defect which he knew had existed had been remedied, and to act on that belief. *Lynch v. Railroad*, 112 Mo. 434; *Myers v. Kansas City*, 108 Mo. 487; *Sargent v. Railroad*, 114 Mo. 356; *Yarnell v. Railroad*, 113 Mo. 580; *Weller* case, 120 Mo. 635; *Turner v. Railroad*, 74 Mo. 602; *Clark v. Railroad*, 127 Mo. 213. (7) It is only where one has himself taken every reasonable precaution to learn and is unable to learn, that he can rely on the presumption that another will do his duty. *Clark v. Railroad*, 127 Mo. 213; *Weller v. Railroad*, 120 Mo. 635; *Culbertson v. Railroad*, 140 Mo. 35. (8) The plaintiff was only entitled to recover reasonable compensation for his injuries. This instruction permits a recovery for all expenses and liabilities incurred, whether reasonable or otherwise, and also for all liabilities for medical treatment, although the evidence did not disclose the amount of such liability. *Rhodes v. Nevada*, 47 Mo. App.

501; *Duke v. Railroad*, 99 Mo. 351; *Hunter v. Mexico*, 49 Mo. App. 17.

*S. H. Corn* and *Johnson & Wait* for respondent.

(1)  Unless the court could pronounce from the undisputed facts in evidence that the defect in the crossing was "obviously and necessarily dangerous," and that the plaintiff knowingly assumed the risk, the case was properly left to the jury. *Madison v. Railroad*, 60 Mo. App. 599; *Maus v. City of Springfield*, 101 Mo. 618; *Gerdes v. Iron & Foundry Co.*, 124 Mo. 347; *Petty v. Railroad*, 88 Mo. 306–315; Beach on Negligence, sec. 247; *Bluedorn v. Railroad*, 108 Mo. 439; *Sullivan v. Railroad*, 117 Mo. 221; *Wiggin v. St. Louis*, 135 Mo. 559. Knowledge of the existence of the defect will not preclude a recovery. *Barr v. Kansas City*, 105 Mo. 550; *Loewer v. Sedalia*, 77 Mo. 431; *Flynn v. Neosho*, 114 Mo. 572. (2) Instructions 1 and 2 were even more favorable to defendant than it was entitled to.  *Lewis v. Railroad*, 59 Mo. 504; *Tetherow v. Railroad*, 98 Mo. 74;  *Griveaud v. Railroad*, 33 Mo. App. 469. (3) The duty of a railroad company to construct and maintain a crossing for the use of the public over its track where the same crosses a public road, and the character of such crossings, are prescribed by statute; and the court might well have instructed the jury that the duty to maintain such crossing was absolute. R. S. 1889, sec. 2609; Shear. & Red. on Neg. [2 Ed.], p. 182, sec. 13a, 145, 146; *Henry v. Railroad*, 44 Mo. App. 110. (4) The court instructed the jury in number 7 given at the instance of defendant, that "if the crossing over defendant's railroad track was in such condition that a person exercising ordinary care . . . . . . could ride along and over such crossing on horseback with reasonable safety, then the crossing was sufficient

in law." It is submitted that this cures any possible error in plaintiff's instructions numbered 1 and 4, and precludes defendant from complaining. *Jennings v. Railroad,* 99 Mo. 394; *Whalen v. Railroad,* 60 Mo. 323; *Dickson v. Railroad,* 104 Mo. 500; *Shortel v. St. Joseph,* 104 Mo. 121; *Ridenhour v. Railroad,* 102 Mo. 270; *Deweese v. Mining Co.,* 54 Mo. App. 476. (5) The court will not reverse for error in the phraseology of an instruction, when taken with the issues made in the pleadings and all the instructions given, it is manifest that the jury were not misled. *Nelson v. Foster,* 66 Mo. 381; *Blewett v. Railroad,* 72 Mo. 583; *Bradford v. Floyd,* 80 Mo. 207. (6) The testimony as to the unsafe condition of the crossing was clear and conclusive, and the court could properly have assumed that fact in the instructions without committing reversible error. *McGuire v. Railroad,* 43 Mo. App. 354; *Barr v. Armstrong,* 56 Mo. 577; *Fields v. Railroad,* 80 Mo. 203; *Bank v. Hatch,* 98 Mo. 376; *Carroll v. Railroad,* 88 Mo. 239; *Walker v. Kansas City,* 99 Mo. 647; *Pope v. Railroad,* 99 Mo. 400; *Dickson v. Railroad,* 104 Mo. 491. (7) Whatever effect the omission from plaintiff's third instruction of the words "and repair the same" might be held to have if that instruction stood alone, it was abundantly remedied by instruction number 7 given for the defendant. *Le May v. Railroad,* 105 Mo. 361. (8) It is confidently asserted that it is only in those cases where the defect which caused the injury complained of was caused by other means than the ordinary use for which the structure was designed, that notice and time for repair have been held necessary to the imputation of negligence. *Case v. Railroad,* 75 Mo. 668; *Rutledge v. Railroad,* 78 Mo. 291; *Vinyard v. Railroad,* 80 Mo. 92; *Walthers v. Railroad,* 78 Mo. 617; *Townsley v. Railroad,* 89 Mo. 31; *Foster v. Railroad,* 44 Mo. App. 11. (9) Plaintiff had a right to presume

that defendant would perform this duty. *Settle v. Railroad*, 127 Mo. 336; *Griveaud v. Railroad*, 33 Mo. App. 467; *Sullivan v. Railroad*, 117 Mo. 223; Shear. & Red. on Neg. [2 Ed. ], p. 34, sec. 31.

MACFARLANE, J.—The action is to recover damages for injuries plaintiff sustained by reason of the alleged negligence of defendant in permitting a public road crossing of its railway to become defective and dangerous. The *petition* charges that a public road crossed defendant's railway two or three miles west of the town of Cameron. That it was the duty of defendant to have and maintain a good and sufficient crossing over said railroad, consisting of a plank of good and sound timber not less than sixteen feet in length, ten inches in width, and two inches in thickness, securely spiked on each side of each rail of said railroad to the cross-ties thereof, and otherwise constructed and built for the convenient, safe and proper use of the people traveling along said public road and across said railroad. That said defendant on the twenty-sixth day of August, 1894, "unmindful of its duty aforesaid, had at the place aforesaid negligently used plank only twelve feet in length in the construction of a crossing over its said railroad, and had carelessly and negligently permitted such crossing to become out of repair and dangerous, in that the timber in the plank was unsound, split, and decayed, and a portion of the plank on the west side of the east rail of said railroad was split off and detached, leaving an open space of at least five inches in width and five feet in length between said plank and said rail. That on the day and year aforesaid, to wit, on the twenty-sixth day of August, 1894, after nightfall of the said day, the plaintiff was traveling on horseback along said public road westward, and while crossing said railroad at the place

aforesaid, and in the exercise of proper and ordinary care, his horse stepped into the space between the rail and plank aforesaid, and fell, and threw the plaintiff to the ground upon said railroad crossing, and being so thrown one of his feet became fastened in the stirrup of the saddle, and plaintiff was unable to release himself from the horse, and his horse's foot was so fastened in between the plank and rail aforesaid that he and the plaintiff were for a long time held and bound to the crossing aforesaid; that after great efforts the horse succeeded in pulling his foot from the rail and plank, and being frightened and beyond control of the plaintiff, ran away and dragged the plaintiff upon the ground.'' The injuries plaintiff suffered and the pecuniary losses and expenses he incurred are thereupon detailed and judgment for $20,000 is prayed.

The *answer* denies each allegation of the petition and pleads contributory negligence.

The *evidence* shows that the railroad crossing was originally constructed in the manner and of the material required by the statute, except that it may have been deficient in width, which is immaterial in this case, as such deficiency had nothing to do with the injury. A witness testified that on July 14, 1894, he drove over the crossing with plaintiff, and a plank in the crossing between the rails was broken and loose, and plaintiff's attention was then called to the dangerous condition of the crossing. These facts plaintiff admitted in giving his testimony. The evidence tends to prove that on the twenty-sixth of August, 1894, about five inches of a plank between the rails and next to the east rail had been split off, leaving a space or "hole five inches wide and about five feet long between the remaining part of the plank and the east rail of defendant's track. This open space extended from about the center of the county road to near the south side of the crossing,

leaving on the north side sufficient space to cross without passing over it. On said day plaintiff, traveling west on horseback, at an ordinary gait, went upon the crossing in the beaten track, and the left fore foot of his horse was caught and became fastened in this open space. In attempting to extricate himself the horse fell and plaintiff was thrown from his seat to the ground, one foot becoming fastened in the stirrup. The horse, when freed, ran, dragging plaintiff twenty or thirty yards. In the disaster plaintiff's thigh bone was broken. Plaintiff testified that the accident occurred about dusk. Other evidence tends to prove that it was about sunset. Plaintiff was asked if, when he went upon the crossing, he was paying any particular attention to the road. He answered: "No particular attention. I always pay attention crossing a railroad to see whether trains are coming."

Defendant's section foreman testified that on Saturday he examined the crossing and did not see the piece of plank that had been broken out, or notice any defect. On Monday morning following he found the defect and repaired it. This was after plaintiff had been injured. He further testified: "I spiked that plank down at that crossing three or four days before the accident. I don't remember that the plank was split at that time, but there was a kind of weather crack in it, caused by the sun and weather."

At the request of plaintiff the court gave to the jury the following *instructions:*

"1. The court declares the law to be that it was the duty of the defendant at and prior to the time when it is claimed the plaintiff was hurt, to erect and maintain a railroad crossing at all points where its road crossed the public highway, and it was the defendant's duty to keep and maintain such crossing safe for the use of all persons to cross who, while crossing, should

use reasonable care and caution in crossing over the same; and if any person, while in the exercise of reasonable care and prudence, be injured by the failure to have and keep such crossing in safe condition, then the defendant would be liable for such injury.

"2. Reasonable care, as used in these instructions, means such care and caution as a reasonably prudent person would have used under such or like circumstances.

"3. If the jury believe from a preponderance of the evidence in this case that the defect in the railroad crossing in question caused the injury which the plaintiff claims to have sustained, and that such defect had existed long enough for the defendant to have discovered it by the exercise of reasonable care on the part of its officers and employees, then the law presumes that the defendant had notice of such defect; and the jury will find for the plaintiff, if they further find that plaintiff at and just before the injury was exercising such care and caution as he approached and went upon such crossing as a reasonably prudent man would have exercised under like circumstances.

"4. The jury are instructed that the duty which the law imposes on railroad companies to keep their crossings of public roads in a safe conditon for the use of travelers over the same, is a continuous duty, and travelers have a right to presume that when a crossing has become defective the company will discover such fact and make proper repairs of the same in a reasonable time."

Plaintiff recovered judgment upon a verdict for $10,000, and defendant appealed.

At the close of all the evidence defendant asked the court to instruct the jury that "under the pleadings and evidence in this case the plaintiff can not recover and the verdict must be for defendant." The court

refused this instruction and its action is assigned as error.

In support of this assignment counsel insists that plaintiff knew that the crossing was defective; that the defects were obviously dangerous, and could easily have been avoided.

Plaintiff testified on the trial that he knew about forty days before he was injured that a plank on the crossing was then loose and tilted up when crossed by a buggy. He testified further that when he rode onto the crossing, on the occasion of his injury, he paid no particular attention to the road. These facts stand against plaintiff as admissions.

Plaintiff states in his petition that "a portion of the plank on the west side of the east rail of said railroad was split off and detached, having an open space of at least five inches in width and five feet in length between said plank and said rail" and in this space his horse's foot became fastened. These allegations of the petition were true according to all the evidence. The petition further alleges that the planks used in the crossing were only twelve feet long. That would leave seven feet of the crossing unimpaired, over which plaintiff could have passed in safety. It does not appear how deep the hole was, but we may fairly assume it could have been seen if plaintiff had looked "particularly," though at the time about dusk, and we may assume further that its dangerous character was obvious.

The question is whether or not, under this state of facts, plaintiff can be charged conclusively with contributory negligence in failing to see and avoid the danger.

It appears nowhere from the evidence that plaintiff in fact saw the defect in the crossing before he rode upon it. We know of no rule of law which requires a

traveler on a highway to look "particularly" to see if it is free of defects. Railroad crossings are designed for use by the public as highways, and one passing over them is only required to exercise ordinary care, having in view all the circumstances. These circumstances include the known duty of a railroad company to make and maintain the crossing in the manner required by statute, the knowledge of the traveler of its previous condition and of the prior neglect of the company in respect to maintaining it, and his imperative duty to look out for running trains. Unless he sees the dangers, or in fact has them in mind when he attempts to cross, he can not fairly be charged with contributory negligence as a matter of law.

It can not be said, then, as a matter of law, that plaintiff did see this defect for the reason that by careful inspection it could have been seen, for the law imposed no such absolute duty upon him. He was only required to exercise ordinary care in the circumstances, and whether he did so or not was a question for the jury.

This is the well established rule in cases of injuries caused by defective streets and sidewalks, and we see no reason why a different one should be applied in case the injury results from a defective railroad crossing. Streets and crossings are alike designed for public travel and both are alike required to be kept in a reasonably safe condition. The difference is in the character of the way and its surroundings, and these the jury should properly consider. See *Barr v. City of Kansas*, 105 Mo. 550, and cases cited; *Flynn v. Neosho*, 114 Mo. 572; *Madison v. Railroad*, 60 Mo. App. 604; *Maus v. Springfield*, 101 Mo. 618; *Graney v. St. Louis*, 140 Mo. 89; *Wiggin v. St. Louis*, 135 Mo. 565.

We are of the opinion that the case, as made by the pleadings and evidence, was one for the jury.

II. The statute requires railroad crossings to be constructed and maintained in a specified manner, and of a designated material. We understand this action to be for a neglect of the statutory duty of maintaining the crossing in question.

While the statute, by its terms, imposes an absolute and continuing duty upon railroad companies in respect to maintaining crossings, yet a neglect of the duty can only fairly arise when they have notice, actual or constructive, of a defect, and fail within a reasonable time thereafter to make the necessary repairs.

The statute makes railroad companies liable for all damages resulting from a neglect to construct such crossings in the first instance, but for neglect to keep them in repair it declares no liability (R. S. 1889, sec. 2609). The question of liability for injuries occasioned by neglect to repair are therefore to be governed by the general rules of the law of negligence above stated.

The law imposes the duty on municipal corporations of maintaining its streets in a condition reasonably fitted for travel. Yet they are only required to exercise ordinary care in ascertaining and repairing defects therein. *Maus v. Springfield, supra; Market v. St. Louis*, 56 Mo. 190. The statute requires railroad companies to build and maintain fences on the sides' of their roads and makes them liable for damages for animals killed by reason of their failure to do either. The duty imposed is as absolute as that of maintaining crossings, yet under that statute it is held that "the law allows a reasonable time to discover the defect and repair it. In other words, it holds the company to the exercise of due care and no more." *Rutledge v. Railroad*, 78 Mo. 586. See, also, *Clardy v. Railroad*, 73 Mo. 576; *Case v. Railroad*, 75 Mo. 670. In the last case cited it is said: "Any other doctrine than this, in regard to the duty of the company, would make it the

insurer of fences which it is required to build and maintain.''

Applying this rule, which is unquestionably a just one, the first and fourth instructions given at request of plaintiff can not be sustained. The instructions can only be construed to mean that defendant was bound, at all times, to keep its crossing in a safe condition. It conclusively presumes that defendant had notice of the defect and opportunity to repair though it may only have existed for the shortest period of time.

Also, as abstract propositions of law, the instructions are not correct in declaring that it was the duty of defendant ''to have and keep such crossing in a safe condition.'' The measure of defendant's duty is prescribed by statute. If the crossing was built and maintained of the material, and according to the specifications of the statute, defendant's duty was performed without regard to the effectiveness of the completed work to constitute a safe crossing. The question is, did defendant do what the statute required it should do to secure the safety of the public while crossing its road? If it did so, then there can be no liability.

On the other hand, if a portion of a plank was split off and thrown out of place, a defect was caused which defendant should have repaired within a reasonable time after notice thereof, actual or constructive. Whether or not notice could be implied from the length of time the defect had existed, and whether or not defendant had reasonable opportunity to repair, are generally questions for the jury. They should be considered in view of the statutory duty defendant owed to the public; the dangers to be apprehended from defects; the use made of the crossing; the character of the repairs required, and other circumstances. The instructions virtually make defendant an insurer of the safety of the crossing while the duty of defend-

ant only required reasonable care in discovering defects and proper diligence in repairing them. The instructions declare incorrect principles of law and their effect was presumptively prejudicial. *Dayharsh v. Railroad*, 103 Mo. 570.

III. The fourth instruction is complained of for the further reason that it states, as a proposition of law, that "travelers have the right to presume that when a crossing has become defective the company will discover such fact and make proper repairs of the same in a reasonable time." The duty of defendant required it to exercise care to discover defects and to repair them. The conduct of a traveler may be governed by his knowledge of this duty, and may be so measured by a jury in determining whether or not he exercised proper care in the particular case, and the jury might infer from lapse of time that the traveler was not negligent in failing to see and avoid the defect, but we do not think the traveler has the right to act upon the presumption of a fact which he could have ascertained definitely by looking. Indeed, plaintiff does not claim that he thought of the loose plank, of which he had previous knowledge, at all, when he rode on the crossing, much less did he presume it had been repaired. As has been held, plaintiff was not guilty of contributory negligence as a matter of law in not thinking of a defect that he knew existed a month before, but it was improper to instruct the jury that he had the right to presume that it had been repaired, when there is no evidence that he acted upon such a presumption.

IV. In defendant's third instruction it is declared to the jury that if "the defect had existed long enough for the defendant to have discovered it by the exercise of reasonable care on the part of the officers and employees, then the law presumes that defendant had

notice of such defects." The question was whether or not defendant had notice of the defect and opportunity to repair it before the injury to plaintiff. This was a question of fact upon which there was a conflict in the evidence. Plaintiff's evidence tended to prove that the defect had existed for forty days. On the other hand, defendant's foreman testified that he nailed down the loose plank three or four days before the accident, and examined the crossing the day before and found no defects. The jury should have been left to pass upon the question of notice, and make such finding as they considered just under all the evidence "without casting into the balance such a reference to the presumption obtaining in the absence of evidence." *Moberly v. Railroad*, 98 Mo. 183; *Lynch v. Railroad*, 112 Mo. 433, and cases cited.

Under the evidence the instruction was improper.

V. Counsel insists that the instruction on the measure of damages was erroneous, for the reason that it permitted the jury to find items of damages on account of liabilities incurred for medical treatment, though there was no evidence of the amount of such liability. If counsel are correct in their statement, the objection is well taken. *Duke v. Railroad*, 99 Mo. 351; *Smith v. Railroad*, 108 Mo. 251.

We make no examination as to the correctness of the statement, as the error, if made, can be corrected on a retrial.

Judgment reversed and cause remanded for a retrial. All concur.