STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION OF MISSOURI,
Respondent,

v.

August W. CONRAD et al., Defendants,

Wabash Railroad Company, a Corporation,
and Fred Weber, Contractor, Inc., a
Corporation, Appellants.

No. 45985.

Supreme Court of Missouri,
Division No. 1.

March 10, 1958.

Robert L. Hyder, Minor C. Livesay, Jefferson City, for plaintiff-respondent.

Albert E. Schoenbeck, St. Louis, for defendant-appellant, Wabash Railroad Co.

Wm. J. Becker, Clayton, for defendant-appellant, Fred Weber, Contractor, Inc.

HOLLINGSWORTH, Presiding Judge.

This is a condemnation proceeding brought by the State Highway Commission of Missouri to acquire certain tracts of land in St. Louis County for the establishment and maintenance of a state highway from Route 66 along Brown Road in a southeasterly direction to St. Louis Municipal Airport (Lambert Field). Among said properties condemned was a tract of 1.02 acres owned by the Wabash Railroad Company at the point where the proposed highway was to cross the Wabash Railroad right of way. When the suit was filed, Fred Weber, Contractor, Inc., occupied a portion of that tract as lessee of the railroad. Exceptions were filed in the Circuit Court of St. Louis County to the award of damages made by the commissioners to the railroad and Weber for the taking of said property. Upon trial in the circuit court, a jury was waived and the issue of their damages was submitted to the trial court, resulting in their being jointly awarded the sum of $5,200, from which they have jointly appealed. Each appellant, however, has separately briefed the error of which it complains.

The sole complaint of the railroad is that the trial court erred in ruling that the railroad was not entitled to be compensated for specifically enumerated items of expense aggregating $28,000, allegedly incurred as a direct consequence of the establishment of said crossing. Weber's sole assignment is that the trial court erred in failing to apportion between the railroad and Weber the compensation jointly awarded them. The amount in dispute is $28,000 and jurisdiction of the appeal is therefore vested in this court under Article V, § 3, of the Constitution of Missouri, V. A.M.S.

The Wabash Railroad runs in a general east-west direction in St. Louis County. A public highway known as Brown Road, as it formerly extended eastward, lay adjacent to the north side of the railroad right of way to Eva Avenue, a north-south dirt road, at which point Brown Road merged with Eva Avenue, turned southward and crossed at grade over the railroad, and connected with Wabash Avenue, an east-west street, situate immediately south of the railroad. The railroad owns an 11-acre tract of land lying in the northeast quadrant of the intersection of Eva

Avenue-Brown Road and the railroad right of way. Weber, as stated, occupied a portion of that tract.

The right of way of the railroad is 100 feet in width. The right of way of the new highway is 150 feet in width. The new highway extends, as does Brown Road, in a general southeasterly direction and crosses the railroad at an acute angle (32 degrees, 2 minutes) near the point of the old crossing but, due to the widening of the highway and the acuteness of the angle of its intersection with the railroad right of way, the crossing is considerably elongated and most of the area occupied by it lies to the east of the old crossing. The widened highway also encroaches upon and takes from the railroad a triangular shaped tract of 0.15 of an acre out of the southwest corner of its 11-acre tract. Thus it is that of the 1.02 acres taken from the railroad, .87 of an acre lies within and .15 of an acre lies immediately north of its right of way.

Prior to the institution of this action, the Highway Commission, in accord with the provisions of Section 389.640 RSMo 1949, V.A.M.S., applied to the Public Service Commission for an order authorizing construction and maintenance of the crossing with which we are here concerned. (All statutory references, unless otherwise stated, are to RSMo 1949, V.A.M.S.) Following notice and hearing, the Public Service Commission, on March 6, 1951, ordered, insofar as here pertinent.:

"3. That the State Highway Commission of Missouri shall pay the cost of all road work and of providing for proper drainage thereof, including the cost of drainage structure incidental thereto, and that the Wabash Railroad Company shall provide, at its own expense, the customary, usual and necessary cattle guards, cross planks, crossing signs, and all necessary changes in its or its lessees' facilities.

"4. The crossing shall be protected by flashing light signals and short-arm gates, and also by the establishment of traffic controls over the crossing, detailed plans of which will be submitted to this Commission for approval prior to installation and within six months from the date of this order, unless otherwise ordered by this Commission. The cost of protection, with the exception of the traffic controls on Wabash Avenue, the cost of which will be borne entirely by the State Highway Commission, will be borne equally by the Wabash Railroad Company and the State Highway Commission of Missouri."

Thereafter, on October 27, 1954, the Public Service Commission, with the parties before it, noted that its order of March 6, 1951, had failed to apportion the costs of maintenance and construction of the crossing and attendant facilities and "that no responsibility with respect thereto [had] been cast upon any party", and that it had "the jurisdiction and duty to enter such an order * * *", and accordingly further found and ordered:

"After having considered the entire record of this proceeding, including the former orders of the Commission, pleadings, etc., contained therein, we are now of the opinion and find that the Wabash Railroad Company should be responsible for the maintenance of so much of said crossing as lies between the ends of its ties, and it also should be responsible for the maintenance of all railroad property incidental to the crossing, including signal facilities, short-arm gates, cattle guards, warning signs, etc. The State Highway Commission should be responsible for the maintenance of the remaining portion of said crossing and related property, including drainage facilities, approaches to the crossing, traffic controls, etc.

*　*　*　*　*　*

"Ordered: 1. That the Wabash Railroad Company shall be responsible for the maintenance of that portion of the grade crossing authorized in the original Report and Order issued March 6, 1951, in this cause, located at Wabash Railroad Company's mile-

post No. 165.08 within the City of Berkeley, Missouri, which lies between the ends of the ties and also said company shall be responsible for the maintenance of all railroad property including signal facilities, short-arm gates, whistle posts, cattle guards, etc."

Neither party sought a review of those orders. The crossing was constructed and is maintained by each of the parties pursuant to and in the manner as directed.

The evidence offered by the railroad in support of the five specific items for which it seeks compensation in addition to the value of its land taken in this proceeding and the cost of removal of Weber's improvements is unquestioned. Those items are:

(1) The cost of the crossing over the railroad track was $3,159.02.

(2) The cost of installation of automatic flashing light signals and short-arm gates at the crossing and the cost of the circuits necessary to their operation in conjunction with traffic control signals installed by the Highway Department at the intersection of the new highway and Wabash Avenue was $13,424.29, one-half of which ($6,712.-65) was borne by the railroad.

(3) The cost of providing flagging protection during construction of the crossing was $2,659.41.

(4) The estimated annual cost of maintenance and operation of the crossing protection required by the order of the Public Service Commission is $766, which capitalized at 5% would represent capital investment of $15,320.

(5) The cost of removal of the old crossing was $148.92.

The total cost of the improvement, to the railroad, computed as aforesaid, was, as stated, $28,000.

A memorandum filed by the trial judge on the date judgment was rendered states his position:

"Because of the view I take that none of the items making up the $28,-000.00 shown by defendants in evidence is properly chargeable against plaintiff, Highway Commission, I find that, taking into consideration the land and cost of removal of improvements, the difference in value before and after the taking would amount to $5,200.00, and judgment in that amount, with costs, is being entered today."

It is the contention of the railroad that the apportionment by the Public Service Commission in connection with construction of the crossing, protection and future cost of maintenance and operation became proper elements of damages to be considered in this proceeding. In support of that argument, we are cautioned to bear in mind that, although Section 389.-640 gives the Public Service Commission broad powers to determine the manner and point of crossings and the terms of installation, operation, maintenance, apportionment of expense, use and protection, yet said section is not to be construed in violation of Article I, § 26, of the Constitution of Missouri, V.A.M.S., providing that private property shall not be taken or damaged for public use without just compensation.

The general rule is that where a portion of a railroad right of way is appropriated for a highway crossing the measure of compensation to the railroad is the diminution in value of the property for railroad use. There is authority, however, that in such cases the railroad is entitled to its expense consequential to structural changes. See 29 C.J.S. Eminent Domain § 147(b), p. 996. In the instant case, the railroad insists that Missouri is committed to the latter rule by the case of Franklin County v. Missouri Pacific Railway Company, Mo.Sup.1919, 210 S.W. 874. At first blush, that case may seem to support the contention made, but when it is considered in connection with the narrow issue there presented and the development of the law of Missouri relating to the operation of railroads (and other public utilities in Missouri) subsequent to

the establishment of the Public Service Commission of Missouri in 1913 and the enactment of the State Highway Commission Law in 1921, the case patently is no longer authority, if it ever was, for the contention here made by the railroad.

The opinion in that case specifically states, loc. cit. 876, that "a single legal proposition [is presented] for determination, and that is: Is the county liable to the railroad company for the expense of installing and maintaining an electric alarm bell, which it is contended is reasonably a necessary precaution for the safety of the traveling public in crossing the railroad upon said public road." In discussing that question, four Missouri cases are cited, all decided in the 1890's, long prior to the present concept of the Legislature's retention of dominion of (a) public utilities as expressed in the Public Service Commission Law, (b) the highway system of this State as provided by the State Highway Commission Law and other statutes in aid, and (c) the respective rights and duties of railroads and the Highway Commission in the precise situation here involved. It is worthy of note that even though the early cases cited in the Franklin County case, supra, do imply that Missouri then adhered to the minority doctrine, yet the court, in the Franklin County case, did not follow them. It decided that the railroad was not entitled to be compensated for the cost of installation of the alarm bell.

Section 389.640 (prior to an amendment in 1953 not here material) invests the Public Service Commission with jurisdiction to determine the matters in issue in the instant case to the extent following:

"2. The commission shall have the *exclusive* power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing * * * and to prescribe * * *

the proportion in which the expense of the alteration * * * shall be divided between the railroad * * * and the state * * *." (Italics ours.)

Although railroads are public highways, their tenure of such ways is in the nature of a public trust and subject to state supervision. The state has the right to build other highways for public user and in so doing to build them across existing railroads, as the public interest may reasonably require. In the exercise of its police powers in that respect, the state created the Public Service Commission as its *exclusive agency* to determine, among other things, just apportionment of the cost incident to installation, operation and maintenance of a crossing such as the one here involved. State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 995, 70 S.W.2d 57, 60. We have been cited to no case holding that the apportionment of such costs amounts to a taking of the railroad's property without just compensation and certainly we have found none. In State ex rel. Wabash Railroad Co. v. Public Service Commission, Mo. Sup., 273 S.W.2d 334, this court made an extended review of previous attacks made upon the constitutionality of the apportionment of costs of construction, maintenance and operation of crossings at railroads under § 389.640, and held devoid of merit the contention there made by the railroad that such an apportionment was violative of the due process clauses of the United States and the Missouri Constitutions. The reasoning there set forth seems to apply with equal force to the contention here made.

Moreover, in the instant case, the fact is that the trial court awarded the railroad compensation for the property taken from it in condemnation and no complaint is made that the award does not amount to just compensation for the property so taken. We think it clear that the award is not violative of Article I, § 26, of the Constitution of Missouri.

We next consider the contention that notwithstanding the order made by the commission in accord with the provisions of § 389.640, the railroad is nevertheless entitled to recover in this proceeding the aforesaid itemized expenses incurred as a result of the establishment of the crossing. For the reasons hereinafter stated, we think it is not.

The recent case of Wabash Railroad Co. v. City of Wellston, Mo.Sup., 276 S.W.2d 208, 211, seems to be our last decision with regard to the scope and meaning of § 389.640. There we said: "The section clearly vests in the Public Service Commission 'exclusive power' to determine not only 'the manner * * * and the terms of installation, operation, maintenance * * * use and protection' at any crossing at grade of any public road, highway or street by a railroad, but the 'apportionment of expenses' of any such protection. In Liddle v. Thompson, 236 Mo.App. 1071, 162 S.W.2d 614, 621 [8], we said of what is now Sec. 389.640: 'Since 1913 the Public Service Commission has had exclusive jurisdiction over the establishment of grade crossings and has been authorized to determine and prescribe the manner and point of crossing and the terms of installation, operation, maintenance, apportionment of expenses and the use and protection of such crossing.' And see: State ex rel. Alton Railroad Co. v. Public Service Commission, 334 Mo. 985, 70 S.W. 2d 52, 54 [1–6]; American Petroleum Exchange v. Public Service Commission, Mo., 172 S.W.2d 952, 955 [4, 5]. We hold that the commission had jurisdiction over the instant crossings and the apportionment of the cost thereof."

Section 386.550 provides that: "In all collateral actions or proceedings the orders and decisions of the commission which have become final shall be conclusive." Section 386.510 provides the sole method of obtaining a review of any final order of the commission. So frequently have we held such orders not subject to collateral attack we need not elaborate upon the effect and meaning of these statutes, other than to refer to the case of Wabash Railroad Company v. City of Wellston, supra, 276 S.W.2d 208. There, the Wabash Railroad Company, appellant in the instant case, had applied to the Public Service Commission and obtained its order for authority to install, maintain and operate short-arm gates and flashing light signals at three street crossings in Wellston at a cost of $35,000, $12,000 of which Wellston was ordered to pay. The Wabash made the installations pursuant to that order and thereafter demanded from the city its share of the expense as ordered by the Commission. The city refused the demand. The Wabash sued the city and, in the circuit court, recovered judgment for $12,000, with interest. The city appealed. In this court, as in the trial court, the city attacked the validity of the order of the Commission. The Wabash there asserted and this court sustained its contention that Wellston was "now precluded by law from attacking the public service commission order, either directly or collaterally." In the instant case, therefore, must we hold, as we held at the instance of the Wabash in that case, that the order herein made by the Public Service Commission is not subject to collateral attack.

This brings us to Weber's contention that the trial court erred in failing to apportion between Weber and the railroad the share of the $5,200 award to which each was entitled. We think it probable that the trial court failed so to do simply because no such request was made until the motion for new trial was filed. We know of no duty resting upon the court to make any such apportionment of its own motion. The finding and judgment of the trial court was made on October 8, 1956. The joint motion of the Railroad and Weber for a new trial was not filed until October 17, 1956, in which we find the first mention of apportionment between them. It stated: "8. The court erred in failing to separate the damages sustained by each of these defendants." Insofar

as the record is concerned, the trial court was guilty of no error.

In State ex rel. McCaskill v. Hall, 325 Mo. 165, 172, 28 S.W.2d 80, 82, 69 A.L.R. 1256, 1260, this court had occasion to consider a situation fairly analogous to that here presented. There we said: "The doctrine of the cases tersely stated is this: The aggregate values of all the particular interests and estates in a single parcel of land do not exceed the value of the property as a whole, which the state takes by paramount title for public use; when, therefore, that value is duly ascertained and paid in money to the owners of the various interests, or into court for them, constitutional requirements are fully complied with. The fund is substituted for the property taken. The fact that the owners of the constitutive interests may not agree as to the apportionment among themselves of the sum awarded is merely an incident growing out of such combined ownership for which the condemnor is in no way responsible."

See also the many cases reviewed in City of St. Louis v. Rossi, 333 Mo. 1092, 1102–1103, 64 S.W.2d 600, 604–605. As there stated, 64 S.W.2d, loc. cit. 605 [13], the approved method is to assess in one sum the damages of all interests in a particular lot or tract, "leaving the owners of the fee, lessees, trustees, mortgagees, and sublessees to apply to the circuit court for apportionment of the damages between them according to their various interests." Such has been the routine procedure in many of our circuit courts for years.

We know of no reason why the judgment herein rendered need be reversed and the cause remanded to enable the railroad and Weber, either jointly or as adversaries, to apply to the circuit court for apportionment. The fund is in the court's registry and under its jurisdiction. Both parties have invoked the jurisdiction of that court to make such an apportionment by jointly assigning error on the part of

the court in failing so to do. Both are, therefore, estopped to deny its jurisdiction. Having jurisdiction of the parties and the fund, the parties may make a joint application to the court or, if either becomes recalcitrant, the other, by motion and notice, may duly implead that party; and the court, upon such notice and hearing as due process requires, may apportion the fund between them, as their respective interests appear.

The judgment is affirmed.

All concur.